## LANG *v.* GREEN RIVER DISTILLING COMPANY.

### TRADEMARKS; SIMILARITY OF MARKS.

1. The words "Green Ribbon," as applied to whisky, so nearly resemble the words "Green River," already registered as a trademark for whisky, as to be likely to cause confusion to the public or to deceive purchasers; and registration of them is therefore properly refused by the Commissioner of Patents, especially where there are circumstances indicating that when the applicant, a retail dealer in whisky, adopted the mark, he had in mind the registered mark, which was that of manufacturers of whisky, and had been long applied by them to a well advertised and established article.

2. Whether a mark is or is not registerable as a trademark, because of alleged similarity to another, depends upon the special facts and circumstances of the case.

No. 573.   Patent Appeals.   Submitted May 17, 1909.   Decided June 1, 1909.
Rehearing denied, October 22, 1909.

HEARING on an appeal from a decision of the Commissioner of Patents in a trademark interference case.      *Affirmed.*

The facts are stated in the opinion.

*Mr. E. T. Fenwick* for the appellant.

*Messrs. Dudley, Browne, & Phelps* for the appellee.

Mr. Chief Justice SHEPARD delivered the opinion of the Court:

The appellant, Sam Lang, made application for the registration of a trademark for whisky, consisting of the words "Green Ribbon," in large printed letters, beneath which is a monogram consisting of the letters S. L. within a circular wreath. After some amendments to the application, unimportant to mention, the application was allowed and passed to publication on April 22, 1907. June 6, 1907, the Green River Distilling Company filed an opposition to the registration. It alleged that the words "Green River" had been adopted and used as a trademark for whisky by J. W. McCulloch in 1890, and continuously used thereafter by him and his successor, said Company, of which corporation McCulloch was the president. The right to use said mark had been assigned to said company at the time of its organization, in 1903. It was alleged that he had registered the words as a trademark on December 25, 1900; that the company had registered it on August 8, 1905, and re-registered it on January 13, 1907. The final allegation was that the words "Green Ribbon," which Lang sought to register, are so nearly alike "Green River" in sound and appearance as to be likely to cause confusion in the trade, and to permit applicant's goods to be substituted for opposer's, to the damage of the business and reputation of the latter.

The Examiner of Interferences was of the opinion that the real question was whether the respective words "Green Rib-

bon" and "Green River" were so nearly alike as to be liable to confuse the public.

Much testimony was taken, from which it clearly appears that Green River had been adopted as a trademark and used since 1890 by McCulloch and his successor, on a high-grade distilled whisky made in a distillery owned by McCulloch, and by him sold to the company, that was located near the Green River, in Kentucky. It also appears that the said whisky, so marked, had been widely advertised throughout the United States, and has been sold extensively in this country and abroad. It appears that Sam Lang is a retail dealer in liquor in the cities of Denver and Cripple Creek, in the state of Colorado. He applied the mark "Green Ribbon" to whisky bottled by him, the place of manufacture of which was not shown. Nor does it appear at what date Lang commenced the use of the mark. This whisky does not appear to have had an extensive sale, and there are some circumstances in evidence which would lead to an inference that Lang adopted the mark with a view to obtaining the benefit of the reputation of the Green River whisky, which was well established in Denver and other places in the state of Colorado. The testimony of manufacturers and dealers in whisky, on behalf of the appellee, tended to show that the general public would likely be confused and deceived by the similarity of the respective marks. Testimony of witnesses on behalf of Lang, among whom were barkeepers in his employ, and users and sellers of whisky, tended to show that there would be no confusion in the marks by the public. The Examiner held that there was no resemblance sufficient to produce confusion, and dismissed the opposition. On appeal to the Commissioner, this decision was reversed, and the opposition sustained.

Under the testimony we think it immaterial to inquire into the registration obtained by the appellee under the ten-years' clause of the trademark act, or to consider whether the appellant would be entitled to registration of Green Ribbon as a technical trademark. The substantial question, as stated by the tribunals of the Office, is as to whether the proposed trade-

mark, Green Ribbon, so nearly resembles the trademark of the appellee, "as to be likely to cause confusion or mistake in the mind of the public, or to deceive purchasers." Sec. 5, trademark act [33 Stat. at L. 727, chap. 592, U. S. Comp. Stat. Supp. 1907, p. 1010]. As said by Mr. Justice Bradley: "Similarity, not identity, is the usual recourse when one party seeks to benefit himself by the good name of another. What similarity is sufficient to effect the object has to be determined in each case by its own circumstances. We may say, generally, that a similarity which would be likely to deceive or mislead an ordinary, unsuspecting customer is obnoxious to the law." *Celluloid Mfg. Co.* v. *Cellonite Mfg. Co.* 32 Fed. 94, 97.

The dominating feature of appellant's mark is the words, "Green Ribbon," printed in large letters. Green River whisky had been well advertised and had an established reputation as an excellent article. As intimated above, there are some circumstances to indicate that, when Lang undertook to introduce his whisky, he had in mind the mark of the appellee. The word "Green" is the first object that attracts the eye of the purchaser when seen, and the ear when uttered. River and Ribbon are somewhat similar when represented or sounded. That Lang used the monogram and a label differing in color of background from that of appellee does not weaken the inference as to his intention in adopting the conspicuous feature of the mark. Had he wanted to avoid all confusion with appellee's mark, he could readily have found another and as attractive a name for his product. There is nothing in the evidence tending to show any other circumstance suggesting the name adopted, other than its resemblance to the well-known mark of the appellee.

As was said by the Commissioner, the similarity of the labels is far more striking than their dissimilarity. And we agree in his conclusion as thus stated: "The words as pronounced are not easily distinguishable, and the appearance of 'Green Ribbon' upon a bottle of whisky, without opportunity for comparison with a bottle containing the label bearing the mark 'Green River,' would be likely to cause confusion in the mind of the public."

We have not deemed it important to review the many cases in which the question of similarity and confusion has been considered. These, or most of them, will be found in the decisions below and in the briefs of counsel. In the application of the general principle which is embodied in the statute, each particular case turns upon its own special facts and circumstances, and it would be practically impossible to find another substantially identical in respect of these.

Being of the opinion that there was no error in the decision, it will be affirmed; and the Clerk will certify this decision to the Commissioner of Patents.            *Affirmed.*

A motion for a rehearing was overruled October 22, 1909.